UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA AND NEW
YORK STATE *ex rel.* ORLANDO LEE,
MELVILLE LUCKIE and LUZ GONZALEZ,

                **MEMORANDUM & ORDER**
                13-CV-4933 (MKB)

                Plaintiffs,

                v.

NORTHERN ADULT DAILY HEALTH CARE
CENTER and GALENA DEVERMAN,

                Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On September 4, 2013, Orlando Lee, Melville Luckie and Luz Gonzalez ("Relators") brought this *qui tam* action on behalf of the United States of America and the State of New York against Northern Adult Daily Health Care Center ("Northern Adult") and Galena Deverman, alleging violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), and the New York State False Claims Act, N.Y. State Fin. Law § 187 *et seq.* ("NYFCA"). (Compl. ¶¶ 175–241, Docket Entry No. 1.) On September 8, 2014, the United States and the State of New York declined to intervene in the action. (Docket Entry Nos. 9–10.) On June 25, 2015, Relators filed an Amended Complaint, (Am. Compl., Docket Entry No. 29), and on July 27, 2015, Relators filed a motion for an "alternate remedy," (Letter dated July 27, 2015, Docket Entry No. 30; Relators Mot. for Alternate Remedies ("Relators Mot."), Docket Entry No. 35; Mem. in Supp. of Relators Mot. ("Relators Mem."), Docket Entry No. 36). On August 7, 2015, the State of New York moved to strike Relators' motion for an alternate remedy as premature. (State of New York Letter Mot. to Strike ("NY Mot. to Strike"), Docket Entry No. 31; State of New York

Supp. Letter Mot. to Strike ("NY Supp. Mot. to Strike"), Docket Entry No. 40.) As explained below, the Court denies the State of New York's motion to strike as procedurally improper and denies Relators' motion as premature.[1]

## I. Background

### a. Factual background

According to the Amended Complaint, Northern Adult is an adult day care center that provides "cognitive stimulation," arts and crafts, personal hygiene, and occupational and physical therapy to its elderly and low-income registrants. (Am. Compl. ¶ 12.) As payment, Northern Adult accepts Medicaid, managed-Medicaid, private insurance and private payment. (*Id*.) Northern Adult is obligated to comply with the New York State Health Rules and Regulations, which require Northern Adult to, among other things, give admission priorities to certain registrants, provide nursing and social services, provide assistance and supervision for daily living activities, and provide meals and nutritional supplements. (*Id*. ¶¶ 16–23.) As an applicant to participate in the New York State Medicaid Program (the "Medicaid Program"), Northern Adult submitted a certification that it would comply with all New York State Department of Health ("DOH") and federal Medicaid regulations; however, according to Relators, despite filing that certification, it failed to comply with the regulations. (*Id*. ¶ 34.)

Relators, who were previously employed by Defendants, allege that Defendants billed the Medicaid Program for "substandard services that were inappropriate, unacceptable, harmful, worthless, and/or unnecessary," in violation of DOH and Medicaid regulations. (*Id*. ¶ 43.)

---

[1] On October 6, 2015, the Court referred Relators' motion for an alternate remedy and the State of New York's motion to strike to the Honorable James Orenstein to hear and determine the motion to strike and for a report and recommendation as to the motion for an alternate remedy. (Order dated Oct. 6, 2015.) The Court hereby vacates its October 6, 2015 Order.

Specifically, Relators allege that Defendants, among other things, failed to supervise registrants — resulting in registrants "wandering unescorted" in Prospect Park and around the Park Slope neighborhood of Brooklyn, New York — failed to provide food that adhered to certain dietary and health restrictions, and failed to provide food to African-American and Latino registrants. (*Id.* ¶44.) In addition, among other things, Northern Adult allowed registrants to drink alcohol to the point of intoxication, segregated Latino and African-American registrants, forced developmentally-disabled registrants to wear "embarrassing costumes for the entertainment and amusement of white Russian registrants" and refused to transport registrants to African-American and Latino neighborhoods. (*Id.*)

Relators also allege that Defendants retaliated against them for reporting Northern Adult's misconduct. Relators claim that, (1) Lee was constructively terminated after he raised questions and complained about certain violations, including that Northern Adult was treating Latino registrants poorly, (*id.* ¶¶ 177–91); (2) Luckie was demoted and terminated after he complained about Northern Adult's health violations and its disparate treatment of African American and Latino registrants, (*id.* ¶¶ 192–205); and (3) Gonzalez was constructively terminated after complaining about several deficiencies at Northern Adult, including that it stopped providing physical therapy and that it served African American and Latino registrants' food last, (*id.* ¶¶ 206–222).

b. **Procedural background**

After the United States and the State of New York declined to intervene in this action, Northern Adult requested a pre-motion conference regarding its anticipated motion to dismiss pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs. Letter dated Jan. 14, 2015 ("Defs. PMC Ltr."), Docket Entry No. 18.) On January 23, 2015, Lee also

requested a pre-motion conference regarding an anticipated motion pursuant to 31 U.S.C. § 3730(d)(1) "to seek from New York State the[] [Relators'] share of the civil settlement that the New York State Attorney General entered into with [Northern Adult] resolving a False Claims Act prosecution in which the State recovered over $6.5 million in damages based . . . in part, on information obtained from Relators' [C]omplaint" in this action. (Lee Letter dated Jan. 23, 2015 ("Lee PMC Req."), Docket Entry No. 19.)

As to Relators' motion, Lee asserted that, although the State of New York did not intervene in Relators' *qui tam* action, the New York State Attorney General settled a civil investigation of Northern Adult, received damages, and forced Northern Adult to cease operations. (*Id.* at 1–2.) According to Lee, instead of intervening, the State of New York used Relators' "inside information" to pursue a separate settlement with Northern Adult, but denied Relators their share of the settlement proceeds. (*Id.* at 2.) Lee asserted that Relators were entitled to a share of the settlement as an "alternate remedy" under the FCA and NYFCA because their *qui tam* action "obviously overlap[ped] with the State's investigation" of Northern Adult. (*Id.*)

On February 11, 2015, the Court held a hearing on the prospective motions, and set a schedule for Relators to amend the Complaint and for Defendants to move to dismiss that Amended Complaint. (Min. Entry dated Feb. 11, 2015; Hr'g Tr. 25:22–27:3.) At the hearing, the parties agreed that the anticipated motion for alternate remedies should be addressed after resolving Defendants' motion to dismiss. (Hr'g Tr. 14:9–20; 28:11–29:2.) Despite agreeing to that sequence of resolving the proposed motions at the February 11, 2015 conference, Relators nevertheless moved for an alternate remedy while the parties were briefing the motion to dismiss the Amended Complaint. (Relators Mot.; Relators Mem.) Thereafter, the State of New York

4

moved to strike Relators' motion as contrary to the agreement among the parties at the February 11, 2015 conference. (N.Y. Mot. to Strike 1–2; N.Y. Supp. Mot. to Strike 2.)

**II. Discussion**

    **a. The State of New York's motion to strike**

The State of New York moves to strike Relators' motion for an alternate remedy as premature in light of the parties' understanding at the February 11, 2015 conference that Relators' motion should be addressed after the Court resolved any motion to dismiss.[2] (N.Y. Supp. Mot. to Strike 2 (citing Hr'g Tr. 14: 9–20).) In response, Relators assert that they "have no preference for the order in which the Court rules on the pending motions," but state that "[r]egardless of the outcome of Defendants' motion to dismiss, there will still be a valid motion for alternate remedies." (Relators' Opp'n to N.Y. Supp. Mot. to Strike ("Relators' Opp'n"), Docket Entry No. 41.)

    Rule 12(f) of the Federal Rules of Civil Procedure provides, in pertinent part:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12. Pleadings are defined by Rule 7 of the Federal Rules of Civil Procedure as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Relators' motion for an alternate remedy is not a pleading. Therefore, the State of New York

---

[2] The State of New York cites neither a rule of civil procedure nor case law in support of its motion to strike. Nevertheless, it appears that the State of New York seeks to strike the motion pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

5

cannot properly strike that motion pursuant to Rule 12(f), which relates only to pleadings. *See Dekom v. New York*, No. 12-CV-1318, 2013 WL 3095010, at *6 (E.D.N.Y. June 18, 2013) (denying motion to strike because a party can strike only pleadings pursuant to Rule 12, not legal briefs); *Huelbig v. Aurora Loan Servs., LLC*, No. 10-CV-6215, 2011 WL 4348281, at *2 (S.D.N.Y. May 18, 2011) ("[The] [p]laintiff's [m]otion to [s]trike is improper because Federal Rule of Civil Procedure 12(f) allows a court to strike pleadings only."), *report and recommendation adopted*, No. 10-CV-6215, 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011); *Marshall v. Webster Bank, N.A.*, No. 10-CV-908, 2011 WL 219693, at *12 (D. Conn. Jan. 21, 2011) (finding that a "reply memorandum is not a 'pleading'" and was therefore not subject to being struck pursuant to Rule 12). To the extent the State of New York raised arguments in opposition to Relators' motion, the Court will consider them in its review of the motion for alternate remedies. Accordingly, the Court denies the State of New York's motion to strike.

### b. Relators' motion for an alternate remedy under the FCA and NYFCA

Relators argue that a settlement between the State of New York and Northern Adult qualifies as an alternate remedy to Relators' *qui tam* action under the NYFCA, and they seek to share in that alleged alternate remedy. (Relators Mem. 1–2.) The State of New York argues that in the absence of a valid, particularly-pled *qui tam* action, Relators may not seek to recover a portion of an alternate remedy. (N.Y. Mot. to Strike 1; N.Y. Supp. Mot. to Strike 1–2.) According to the State of New York, because the Complaint is being challenged under Rule 9(b) and Rule 12(b)(6), there is not yet a valid *qui tam* action on which Relators may seek an alternate remedy. (N.Y. Supp. Mot. to Strike 1–2.)

Relators assert that a "valid" *qui tam* action is not a prerequisite for their motion seeking to share in an alternate remedy. (Relators' Opp'n 1–2.) Relators state that merely filing a *qui*

*tam* complaint is sufficient to entitle Relators to seek an alternate remedy where the complaint "provides the government sufficient information to pursue an investigation into the allegedly fraudulent practices." (*Id.* at 2 (citations omitted).) According to Relators, "whether the theory states a claim under Rule 12(b), or whether the pleadings withstand scrutiny under Rule 9(b)," that is "not in any way determinative of whether the Relators' are entitled to alternative remedy." (*Id.*) As discussed below, the Court finds that a valid *qui tam* action is a threshold requirement for seeking an alternate remedy. Because a motion to dismiss Relators' *qui tam* action is currently pending before the Court, Relators' motion is premature, as Relators may ultimately lack a valid *qui tam* claim.

The FCA imposes liability for, among other things, "knowingly" presenting or causing to be presented, a false or fraudulent claim "for payment or approval." 31 U.S.C. § 3729(a). The NYFCA "is closely modeled on the federal FCA," *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 509 (S.D.N.Y. 2014) (citation and internal quotation marks omitted), and it imposes liability for "knowingly mak[ing] a false statement or knowingly fil[ing] a false record," *People ex rel. Schneiderman v. Sprint Nextel Corp.*, 26 N.Y.3d 98, 112 (2015). Pursuant to the *qui tam* provisions of the FCA and NYFCA, a private person may bring a civil action on behalf of the government, as a "relator," for violations of each act. 31 U.S.C. § 3730(b); N.Y. State Fin. Law § 190(2). If a relator brings such an action under either the FCA or the NYFCA, the government may elect, within a set amount of time, to intervene in the action. 31 U.S.C. § 3730(b)–(c); N.Y. State Fin. Law § 190(2)(b).

Both the FCA and NYFCA contain provisions allowing a *qui tam* relator to share in any recovery in the *qui tam* suit, and different provisions apply based on whether the state or federal government has intervened. *See* 31 U.S.C. § 3730(d); N.Y. State Fin. Law § 190(6). In addition,

7

even if the government does not intervene, under both the FCA and the NYFCA, a relator may still potentially share in a recovery that the State or federal government has obtained as an "alternate remedy" to the *qui tam* action. 31 U.S.C. § 3730(c)(5); N.Y. State Fin. Law § 190(5)(c). Under the FCA:

> [T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5). In a nearly identical provision, the NYFCA provides, in pertinent part, that:

> [T]he attorney general and such local government may elect to pursue any remedy available with respect to the criminal or civil prosecution of the presentation of false claims, including any administrative proceeding to determine a civil money penalty . . . . If any such alternate civil remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

N.Y. State Fin. Law § 190(5)(c). Accordingly, both the FCA and the NYFCA grant a relator "the same rights" that the relator would have had in the relator's *qui tam* action.[3]

---

[3] Where a *qui tam* plaintiff asserts that an alternate remedy has been procured by the government, there is typically a question of whether the recovery at issue qualifies as an "alternate remedy." *See, e.g.*, *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 651 (6th Cir. 2003) (remanding complaint seeking share of alternate remedy to the district court to determine whether the government's settlement "overlap[ped] with the conduct alleged by [the] [r]elator in bringing his *qui tam* action," and directing the district court to "hold an evidentiary hearing at which [the] [r]elator and the government may present evidence in support of their positions"); *U.S. ex rel. Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001) (assessing relator's allegations and procedural history and concluding that settlement agreement with government requiring debarment qualified as an "alternate remedy"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 892 F. Supp. 2d 341, 344 (D. Mass. 2012) ("The government effectively settled [the] [r]elators' claims by approving the settlement between Ven-A-Care and

Although the FCA and NYFCA entitle a *qui tam* relator to a share of an alternate remedy, there is a threshold question of whether the relator must have a valid *qui tam* claim before the relator is entitled to share in an alternate remedy. As to the NYFCA, this is a question that has not yet been addressed by New York courts. However, because the NYFCA mirrors the FCA in many respects, "it is appropriate to look toward federal law when interpreting the New York act." *State ex rel. Seiden v. Utica First Ins. Co.*, 943 N.Y.S.2d 36, 39 (App. Div. 2012) (citing *State of N.Y. ex rel. Jamaica Hosp. Med. Ctr., Inc. v. UnitedHealth Grp., Inc.*, 922 N.Y.S.2d 342, 443 (App. Div. 2011)); *see Bilotta*, 50 F. Supp. 3d at 509 ("New York courts rely on federal FCA precedents when interpreting the NYFCA." (quoting *United States v. N.Y. Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07-CV-292, 2014 WL 3905742, at *11 (S.D.N.Y. Aug. 7, 2014))). Accordingly, the Court looks to whether under the FCA, a *qui tam* plaintiff must have a valid *qui tam* claim in order to be entitled to a share of an alternate remedy.

Neither the Second Circuit nor any district courts in this Circuit have addressed the issue. However, in many other circuits, the issue has been resolved and, in these circuits, a valid, particularly pled *qui tam* action is a prerequisite to recovering an alternate remedy. *See U.S. ex rel. Newell v. City of St. Paul, Minn.*, 728 F.3d 791, 799 (8th Cir. 2013); *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 412–13 (4th Cir. 2010); *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007). In *Bledsoe*, the Sixth Circuit held that a *qui tam* relator seeking an alternate remedy was required to have a *qui tam* claim that satisfied the pleading standards under

---

Baxter, and such a separate settlement constitutes an 'alternate remedy.'" (first citing *Bledsoe*, 342 F.3d at 647–49; and then citing *Barajas*, 258 F.3d at 1010–13)).

9

Rule 9(b). *Bledsoe*, 501 F.3d at 522. In *Bledsoe*, a relator brought a *qui tam* action against a healthcare provider based on its allegedly improper billing of Medicare and Medicaid through the use of improper "coding" for certain services. *Id.* at 497–98. Unknown to the relator, after the *qui tam* action was filed, the government investigated the health care center and identified an improper coding issue. *Id.* The government later settled a claim based on the improper coding with the health care center. *Id.*

In an earlier decision, the Sixth Circuit had allowed the relator in *Bledsoe* to re-plead his allegations with particularity, and also held that the government's settlement with the healthcare provider could constitute an alternate remedy under section 3730(c)(5). *Id.* at 522 (citing *U.S. ex rel Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 642–47 (6th Cir. 2003)). On remand from that decision, the district court held that the settlement was not an alternate remedy and also dismissed the *qui tam* action for failure to plead a claim with sufficient particularity under Rule 9(b). *Id.* at 501–02. When the relator appealed that decision, the Sixth Circuit addressed whether the relator needed a valid *qui tam* action before the relator was entitled to a portion of an alternate remedy. *Id.* at 521. The court held that, to be entitled to share in an alternate remedy, the relator was required to have a valid *qui tam* action. *Id.* As a result, the court concluded that the relator could not "recover settlement proceeds because he ha[d] not alleged a valid *qui tam* action that overlap[ped] in any way with the conduct covered by the Settlement Agreement." *Id.* at 522.

Explaining this result, the Sixth Circuit stated that "allowing a relator who failed to plead fraud with particularity to recover proceeds from an alternate remedy pursued by the government with respect to those fraudulent allegations would make little sense," as "[*q*]*ui tam* proceeds are available not to persons who inform the government of wrongdoing, but are only available when

the government proceeds 'with an action.'" *Id.* (quoting 31 U.S.C. § 3730(d)(1)). Thus, the court explained, "[a]bsent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government." *Id.*

Citing *Bledsoe*, the Third Circuit reached the same result in *United States ex rel. Hefner v. Hackensack University Center*. *Hefner*, 495 F.3d at 112. In *Hefner*, the Third Circuit rejected a relator's argument that he was entitled to a share of an alternate remedy despite failing to plead a valid *qui tam* action. *Id.* The court stated, "we read the relevant statutory provisions to mean that a relator is not entitled to a share in the proceeds of an alternate remedy when the relator's *qui tam* action under § 3729 is invalid." *Id.* The court explained that under section 3730(c)(5), the relator has the same rights he or she would have had if the action proceeded under the FCA, and interpreting the statutory provisions that allow a relator to share in the proceeds of a *qui tam* action, "[t]he statute evinces no intent to compensate relators who bring unfounded § 3729 claims, whether the claims are legally or factually unfounded." *Id.* at 112.

The Fourth Circuit reached the same result in *United States ex rel. Godfrey v. KBR, Inc.*, where the court affirmed the district court's dismissal of a relator's claim for a share of an alleged alternate remedy under section 3730(c)(5). *Godfrey*, 360 F. App'x at 413. The Fourth Circuit first noted that there was nothing in the record suggesting that the government had pursued or obtained an alternate remedy and, moreover, "because [the relator's] FCA claims . . . failed, he ha[d] no right to participate in any recovery by the government." *Id.* (first citing *Bledsoe*, 501 F.3d at 522; and then citing *Hefner*, 495 F.3d at 112).

Similarly, in *United States ex rel. Newell v. City of St. Paul*, the Eighth Circuit held that where a relator lacks a valid *qui tam* claim, there is no basis for awarding a share of an alternate

11

remedy. *Newell*, 728 F.3d at 799. In *Newell*, after the relator's *qui tam* action was dismissed for lack of subject matter jurisdiction based on the FCA's public disclosure bar, the relator moved for relief from the judgment, arguing that the municipality had obtained an "alternate remedy" through a settlement, and that he was entitled to a share under section 3730(c)(5). *Id.* at 798. The district court denied the motion and the Eighth Circuit affirmed, explaining that even assuming the government had obtained an alternate remedy through its settlement, the relator was not entitled to a share "because his FCA claims were subject to dismissal under the public disclosure bar," and he therefore lacked any right to a share under section 3730(c)(5). *Id.* at 799. The court stated, "the plain language of § 3730(c)(5) makes clear, if the government pursues an alternate remedy in another proceeding, the *qui tam* relator has the 'same rights' in that proceeding as he would have if the action had continued under the FCA." *Id.* Therefore, because the relator's FCA action had been dismissed, he had no rights and was not entitled to a share of an alternate remedy. *Id.* at 799–800.

    The Court agrees with these circuit court decisions. The Court interprets the FCA to require a *qui tam* plaintiff to state a valid *qui tam* claim before the relator may claim any right to a share of an alternate remedy. This follows from the fact that, where the government elects to pursue an alternate remedy, the FCA grants all relators the same rights they would have in the relators' *qui tam* action. Where a relator lacks a valid *qui tam* claim on which the government or the relator could proceed, the relator lacks any rights to a recovery in that action. In turn, because the relator lacks any right to recovery in the original action, the relator has no right to recovery that would also apply to an alternate remedy. As the Sixth Circuit noted in *Bledsoe*, denying a relator a share of an alternate remedy where the relator fails to plead a valid *qui tam* claim is consistent with the rationale that forms the basis for allowing relators to recover in *qui*

*tam* cases, which is to encourage the government and relators to "collaborate" in battling fraud. *Bledsoe*, 501 F.3d at 522. That incentive is not undermined when courts deny relators who have not stated valid and particularly pled *qui tam* claims a share of an alternate remedy "[s]ince there is no prospect for relators to recover on their claims under any circumstances," and, therefore, denying recovery of an alternate remedy "does not decrease relators' incentives to bring *qui tam* actions in the first instance." *Id.* at 522.

As noted above, as a result of the similarity between the NYFCA and its federal counterpart, "it is appropriate to look toward federal law when interpreting the New York act." *Seiden*, 943 N.Y.S.2d at 39. This is true as to the alternate remedies provisions of both the NYFCA and the FCA, which are nearly identical. *Compare* 31 U.S.C. § 3730(c)(5) *with* N.Y. State Fin. Law § 190(5)(c). As with the rights of the relators under the FCA, the relators who seek to share in an alternate remedy under the NYFCA have "the same rights" the relators "would have had" in the *qui tam* action. N.Y. State Fin. Law § 190(5)(c) ("If any such alternate civil remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section."). Under the NYFCA, like the FCA, a relator only has a right to recovery if there is a valid *qui tam* action. *See* N.Y. State Fin. Law § 190(6). In addition, to the extent the State procures an alternate remedy, the relator has "the same rights in such proceeding as [the relator] would have had" in the original *qui tam* action. N.Y. State. Fin. Law § 190(5)(c). In turn, if the relator has no rights to recover in the original *qui tam* action, the relator would not be entitled to a share of an alternate remedy. Read together, the right to recover an alternate remedy is dependent upon the existence of a valid *qui tam* action in which the relator is entitled to seek a recovery. *See Godfrey*, 360 F. App'x at 413.

Here, because there must be a valid *qui tam* action before Relators can seek a share of any alternative remedy, Relators' motion for a share of the alleged alternate remedy is premature. Relators' *qui tam* action is currently being challenged by Defendants' motion to dismiss pursuant to Rule 12(b)(6) and Rule 9(b) for failure to state a claim and to plead the *qui tam* claim with particularity. (Defs. Mot. to Dismiss, Docket Entry No. 43; Defs. Mem. in Supp. of Defs. Mot. to Dismiss 1–2, Docket Entry No. 43-1.) That motion is currently pending before this Court. Without passing judgment on the merits of that motion or on the validity of Relators' *qui tam* action, the Court has yet to determine whether Relators have stated a valid *qui tam* action. Until the Court decides whether Realtors have stated a claim and have pled fraud with the requisite particularity, Relators do not have any right to recovery in their *qui tam* action, and therefore, they also lack any corresponding right to share in an alternate remedy. Because Relators may ultimately fail to state a valid *qui tam* action, it would be premature to determine Relators' entitlement to an alternate remedy.

The Court is not persuaded by Relators' arguments to the contrary. Relators cite *United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28 (1st Cir. 2013) and *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204 (D.C. Cir. 2011) for the proposition that their Complaint need not satisfy Rule 12(b)(6) or Rule 9(b) to entitle them to a share of an alternate remedy. (Relators' Opp'n 1–2.) These cases are inapposite. Both *Heineman-Guta* and *Batiste* involved the FCA's "first-to-file" rule, which precludes jurisdiction over a relator's *qui tam* action where a related, earlier-filed *qui tam* action is pending. *Heineman-Guta*, 718 F.3d at 34; *Batiste*, 659 F.3da t 1210. As both courts stated explicitly, these decisions concern whether a *qui tam* claim must satisfy Rule 9(b) before the first-to-file rule will bar subsequent copy-cat *qui tam* actions. *Heineman-Guta*, 718 F.3d at 34 ("The question in this case is narrow. It is whether a

14

first-filed complaint under the FCA's first-to-file rule must comply with Rule 9(b) particularity requirements . . . ."); *Batiste*, 659 F.3d at 1210 ("We hold that first-filed complaints need not meet the heightened standard of Rule 9(b) to bar later complaints[.]"). In these cases, the First and District of Columbia Circuits held that Rule 9(b) does not apply to the first-to-file rule, and thus, even if a *qui tam* action fails to satisfy Rule 9(b)'s pleading standard, the first-to-file rule would still apply to bar a subsequent "copy-cat" action. As both courts held, Rule 9(b) was inapplicable because the purpose of the first-to-file rule was to give preclusive effect to the *qui tam* action that presented enough material information for the government to launch an investigation, which could be accomplished even without particularized pleadings. *See Heineman-Guta*, 718 F.3d at 35 ("[T]he allegations of a preclusive first-filed complaint under § 3730(b)(5) need not comport with Rule 9(b)[] . . . to provide the government with sufficient notice of potential fraud."); *Batiste*, 659 F.3d at 1210 ("[First-filed complaints] must provide only sufficient notice for the government to initiate an investigation into the allegedly fraudulent practices, should it choose to do so.").

While Relators selectively quote these decisions, the applicability of Rule 9(b) to the first-to-file rule is not relevant to the question presented here, which is whether a *qui tam* relator must state a valid *qui tam* claim to be entitled to a share of an alternate remedy. As to this question, *Batiste* supports, rather than undermines, the conclusion that to be entitled to any award, a *qui tam* relator must state a valid *qui tam* claim. As the D.C. Circuit explained:

> Even without grafting a Rule 9(b) requirement onto the first-to-file rule, the first plaintiff's complaint is still subject to the Rule 9(b) pleading requirements in order for a court to hear the case. If the first relator did not plead fraud with particularity, his complaint would be dismissed and he would lose his own shot at monetary reward.

*Batiste*, 659 F.3d at 1211. Accordingly, these cases demonstrate that, while the first-to-file

relator does not need to plead a particularized claim to bar subsequent copy-cat actions, it does not follow that the first-to-file relator is relieved of having to plead a *qui tam* claim with particularity to be entitled to a recovery under the FCA.

Relators' citation to the Eighth Circuit's decision in *Roberts v. Accenture, LLP*, 707 F.3d 1011 (8th Cir. 2013) is similarly unpersuasive. First, as discussed above, in *Newell*, the Eighth Circuit directly addressed the question presented here, and held that a relator who lacked a valid *qui tam* claim lacked a basis for sharing in an alternate remedy. *See Newell*, 728 F.3d at 799. Second, in *Roberts*, the Eighth Circuit explicitly stated that it was not confronted with an alternate remedy under 31 U.S.C. § 3730(c)(5). *Roberts*, 707 F.3d at 1016 ("The government did not elect to pursue an alternate remedy in this case, and thus this provision is not in play."). Finally, while the court held that Rule 9(b) did not apply to the question of whether a relator was entitled to settlement proceeds, the Eighth Circuit made clear that this was because the government chose to intervene in the relator's action. *Id.* at 1017 ("We reject the contention that Rule 9(b) plays a part in determining whether a relator is entitled to share in the settlement proceeds resulting from a *qui tam* action i*n which the government elects to intervene*." (emphasis added)). The court in *Roberts* was driven by the concern, not present here, that if the government could rely on a relator's allegations, intervene, secure an award, and then contest the validity of the initial *qui tam* complaint on which it had relied, it would pervert the incentives the FCA was meant to establish. *Id.* at 1018 ("We find nothing in the FCA's statutory text to support this type of *post hoc* use of Rule 9(b) to deny a relator the right to a share of the settlement proceeds in an action in which the government intervenes.").

None of these concerns are present here. Accordingly, because the Court has yet to decide whether Relators have stated a valid *qui tam* action, the Court denies Relators' motion for

a share of any alleged alternate remedy as premature. Should the Court find that Relators have stated a valid *qui tam* claim, they may renew their motion at that time.

### III. Conclusion

For the foregoing reasons, the Court denies the State of New York's motion to strike. The Court also denies Relators' motion for an alternate remedy without prejudice.

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 23, 2016
      Brooklyn, New York