Robert W. Sadowski, Esq
SADOWSKI KATZ LLP
800 3rd Avenue, 28th Floor
New York, New York 10022
Tel. No.: (212) 913-9678
*Attorneys for Relator Orlando Lee*

Noah Kinigstein, Esq.
315 Broadway, Suite 200
New York, New York 10007
Tel. No.: (212) 285-9300
*Attorney for Relator Melville Luckie*
*and Relator Luz Gonzalez*

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA and
NEW YORK STATE *ex rel.* ORLANDO LEE,
MELVILLE LUCKIE and LUZ GONZALEZ,

        Plaintiffs/Relators,

        - against -

                                          Civ. No. CV 13-4933 (MKB)

NORTHERN METROPOLITAN
FOUNDATION FOR HEALTHCARE, INC.,
NORTHERN MANOR MULTICARE
CENTER, INC. AND NORTHERN MANOR
ADULT DAY HEALTH CARE PROGRAM,

        Defendants.

## RELATORS' MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge found that Relators failed to establish the requisite element of

scienter, and therefore recommended dismissal of the Relators' *qui tam* claims.[1]  The Report and

---

[1] Footnote eleven of the Report and Recommendation, states that should the Court disagree with its scienter analysis, the Magistrate Judge will provide a fuller explanation for the conclusion that the Relators can survive summary judgment with respect to those remaining elements of the False Claims Act.  Doc. 105 at 22 n. 11.  Accordingly, it appears Relators have on all other elements of a False Claims Act action established a record on which a jury reasonably could conclude that Defendants are liable for violating the federal and state False Claims Acts on the claims Relators assert.

Recommendation ("Report") in reviewing the element of scienter narrowly focuses on certain individuals with knowledge of Northern's Medicaid billing process, and in particular found lacking evidence of the requisite knowledge of individuals in Defendants' finance/billing department who submitted claims.  Doc 105 at 20-21.  The federal and state False Claim Acts ("collectively "FCAs"), however, do not require that the individuals who perform the bookkeeping functions of assembling and transmitting electronic Medicaid billing must be the individuals with the requisite knowledge to establish scienter.  Such reasoning would enable a fraudster to hire an independent billing company to perform billing or isolate billing departments who perform the ministerial task of compiling and submitting electronic billing, in order to keep them ignorant of the fraudulent billing scheme, and thus shielding them from "knowledge," for purposes nullifying the scienter requirement and avoid liability under the FCAs.  This would eviscerate the FCAs.

The evidence here shows that a census was taken of each resident based on the sign sheet of the registrants.  That census sheet of residents was then transmitted to an independent billing company to actually submit the claim for reimbursement based on the daily rate for which Medicaid reimburses the Defendant.  Here, it is the knowledge of what occurs at the Northern facility, the knowledge of the census, and the transmission by management of Northern, in particular Deverman and her staff, that establishes the knowledge of the falsity—as the Report states, "Deverman acknowledged that she understood that Northern's contract with Medicaid prohibited discrimination on the basis of race or ethnicity."  As an executive agent of the Defendant, who oversaw the operation of the adult day care program on a daily basis, Deverman's knowledge the focus of the scienter inquire, which knowledge is imputed to the Defendant.  Accordingly, Defendant through Deverman's knowledge knew the aspects of the

day-to-day operations, the demographic of the census, and submitted the census to the billing

company, and as such establishes the requisite scienter of the Defendant who thus cause false

claims to be submitted.

     The Court of Appeals has been "lenient in allowing scienter issues to withstand summary

judgment based on fairly tenuous inferences," because such issues are "appropriate for resolution

by the trier of fact." *In re DDAVP Direct Antitrust Litig.,* 585 F.3d 677, 693 (2d Cir. 2009)

(quoting *Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir. 1999)).  Thus, this Court

should decline to supplant the judgment of the ultimate trier of fact, who is in the best position to

make credibility decisions and decide disputed factual issues based on the evidence presented.

Moreover, the Second Circuit has given no indication that anything other than the traditional

rules of vicarious liability apply in analyzing scienter.  "The Act's scienter requirement is

something less than that set out in the common law" for fraud-based causes of action.  *Wang ex*

*rel. United States v. FMC Corp.,* 975 F.2d 1412, 1420 (9th Cir. 1992).  *Accord Wilkins ex rel.*

*United States v. Ohio,* 885 F.Supp. 1055, 1060 (S.D. Ohio 1995) (quoting *Wang* for proposition

that "the scienter requirement is something less than the elements of fraud at common law").  The

statute delineates the standard as follows:

> (b) Knowing and knowingly defined.—For purposes of this
> section, the terms "knowing" and "knowingly" mean that a person,
> with respect to information —
> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the
> information; or
> (3) acts in reckless disregard of the truth or falsity of the
> information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(b).

     Under this standard, "[t]he requisite intent is the knowing presentation of what is known

to be false." *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,* 985 F.2d 1148

(2d Cir.1993) (quoting *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d

1416, 1421 (9th Cir.1991)).  The Relators "need not prove an intent to defraud, but only that the

violations were committed knowingly, that is with willful blindness to the existence of a fact or

reckless disregard for the truth."  *United States v. Incorporated Village of Island Park,* 888

F.Supp. 419, 439 (E.D.N.Y. 1995).  "[W]hat constitutes the offense is not intent to deceive but

knowing presentation of a claim that is either 'fraudulent' or simply 'false.' . . . What is crucial

— and what must be proven at trial — is that the [defendant] knew that the information was false

. . . .  Under the FCA liability can be imposed on anyone who "knowingly presents, *or causes to

be presented*, . . . a false or fraudulent claim for payment or approval;" or "*knowingly makes,

uses, or causes to be made or used, a false record or statement* to get a false or fraudulent claim

paid or approved by the government;" or "conspires to defraud the government by getting a false

or fraudulent claim allowed or paid."  31 U.S.C. § 3729(1)-(3).

Here, the evidence demonstrates that Deverman, the Director of Northern Adult,

knowingly submitted false documents to the billing company for submission to Medicaid.

Deverman has described herself as "a management level employee" at Northern   *See* Deverman

Decl.,

When, as here, managers and executives are implicated in the knowing submission of

false claims to the government, there can be little question that the entity itself is answerable for

their conduct.  The Report asks the Court to require proof that the billing company, and not

Northern executives, "knowingly" submitted the false claims.  Corporate entities such as

Northern, however, can only act through their agents.  Where the Defendant at issue is a

corporation, it is possible to establish corporate scienter by proving facts sufficient to create a

strong inference either (1) that "someone whose intent could be imputed to the corporation acted

with the requisite scienter," or (2) that the statements "would have been approved by corporate officials sufficiently knowledgeable about the company to know" that those statements were misleading. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 195-96 (2d Cir. 2008) (citation and internal quotation marks omitted).

The email exchanges, a petition submitted by minority residents complaining of their discriminatory treatment, as well as direct evidence of discriminatory treatment, plus the totality of the circumstances of running a Russian social club suffice to create more than a strong inference that Deverman, Northern's managing director, and her staff knew of Defendants' scheme to run a Russian social club with funds diverted from Medicaid reimbursement for discriminatory or worthless services to minority registrants. *See Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1386 (9th Cir.1985) ("We agree that a corporation can act only through its agents and employees, and that no reasonable distinction can be made between the guilt of the employee in a managerial capacity acting within the scope of his employment and the guilt of the corporation.").  When an agent acts in the name of the entity, taking advantage of her unique position within the entity to secure government funding, the fraudulent intent of the agent is indistinguishable from the intent of the entity.  So long as the agent has actual or apparent authority to bind the entity, the fraud of the agent is sufficient to support civil liability against the entity.  *See American Society of Mechanical Engineers v. Hydrolevel Corp.,* 456 U.S. 556, 568, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (discussing the "wide variety of areas" in which federal courts "have imposed liability upon principals for the misdeeds of agents acting with apparent authority").  *See also United States v. Fox Lake State Bank,* 240 F.Supp. 720, 722 (N.D. Ill. 1965) (concluding that under the FCA "the fraudulent acts of an agent clothed with authority by a principal are imputable to said principal despite his

alleged lack of consent."), *aff'd in part and rev'd in part on other grounds,* 366 F.2d 962 (7th Cir. 1966); *United States v. O'Connell,* 890 F.2d 563, 569 (1st Cir.1989) (holding that a corporation can be liable under the FCA for the fraudulent representations of its agent under traditional agency principles "even if the corporation received no benefit from the agent's fraud"); *United States v. Incorporated Village of Island Park,* 888 F.Supp. 419, 438 (E.D.N.Y.1995) (following *O'Connell).  See generally* Deborah Sprenger, "Corporation's Vicarious Liability for Fraud of its Agent under False Claims Act (31 U.S.C.A. §§ 3729-3733)," 107 A.L.R. Fed. 665 (1992).  A principal is liable even for criminal acts of an agent if those acts are within the scope of his actual or apparent authority.  *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 660 (2d Cir.1989), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990); *United States v. Bi-Co Pavers, Inc.,* 741 F.2d 730, 737 (5th Cir.1984).

Here, Defendants' compliance officer Nowicki was alerted by the MFCU investigation of numerous billing fraud allegations.  Nowicki Cert. ¶ 18 & Ex. G thereto.  Nowicki, not once made a Medicaid compliance presentation to the staff of Northern.  Nor did Defendant produce the alleged internal investigation to which Nowicki refers.  Nowicki Cert. ¶ 21.  Relator Luckie complained to the head nurse Gennadiy Goldvekht that registrants came to the program without authorization from a doctor—rendering claims for reimbursement false.  Luckie Dep. at 30:12-25; 31:1-25; and 32:1-6.  Likewise, Deverman received complaints about transportation issues from registrants and Relator Lee.  Deverman Dep. at 14, 101; Lee Dep. at 17, 18.  Deverman, despite her knowledge that discrimination was prohibited by Northern's Medicaid contract, admitted to Lee that Chinese registrants were not allowed on outings, and Hispanics were not allowed to go to fancy restaurants and catering halls where Russians were taken.  Lee Dep. at 110:6-22; 20:23-21:25; 115:10-24.  African-American and Hispanic residents had segregated

dining tables, segregated activities, even segregated sitting rooms.  Lee Dep. 41:6-25; 42:8-43:10; 50:9-25; 51:5-15; 74:20-76:6.  When Hispanic registrants complained with a written grievance, Deverman stopped meeting with them.  Lee Dep. at 127:19-133:25.  Although Deverman suppressed Lee's complaints stating "This is not of the things you should be bringing up.  We do the thinking here.  We do the running.  Your job is just to bring in the people, not to complain", (Lee Dep. at 28:3-8; 35:15-23)—leading to a reasonable inference that Lee's complaints were something to conceal.  Those complaints, however, still made their way to Robert Bardach the Administrator, and Klein, another high-level executive, who by all accounts ignored them.  Lee Dep. at 28:3-8.  At a minimum, Nowicki, Deverman, Bardach and Klein were alerted to failings that required investigation—but they did little to nothing to remedy the situation and just kept billing.  This is what has often been described as "head in the sand."  A failure to conduct a proper investigation before making a false statement may be sufficiently reckless to yield False Claims Act liability.  *See, e.g., United States ex rel. Compton v. Midwest Specialties, Inc.,* 142 F.3d 296 (6th Cir. 1998) (holding that defendant who had not properly tested the nonconforming goods it sold the United States had a reckless disregard for the falsity of its claim for payment); *United States v. Krizek,* 111 F.3d 934 (D.C.Cir.1997) (holding that psychiatrist and wife acted with reckless disregard in submitting incorrect billings where wife made implausibly high volume of submissions and psychiatrist failed to review the submissions).  *See Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1387 (9th Cir.1985) (adopting the standard of Restatement (Second) of Torts § 909 and allowing "imposition of punitive damages" on a corporation for the "egregious acts of one employed in a managerial capacity and acting in the scope of employment").  There is overwhelming evidence of the knowledge of the despicable treatment of minority registrants by Northern, that knowledge

more than satisfies the most rigorous standards for establishing scienter that Defendant knowingly submitted false and fraudulent claims to Medicaid.

The evidence cited above suffices to establish a triable issue of fact regarding defendant Northern's knowledge of the false claims caused to be submitted by Deverman and her cohorts to Medicaid.

## CONCLUSION

This Honorable Court should reverse the Report and Recommendation's findings on scienter, deny Defendants' motion for summary judgment and set this matter down for trial on the merits.

Dated: New York, New York
         March 26, 2019

By:  s/Robert W. Sadowski_____
     Robert W. Sadowski, Esq
     SADOWSKI KATZ LLP
     800 3rd Avenue, 28th Floor
     New York, N.Y. 10022
     Tel. No.: (646) 503-5341
     *Attorneys for Relator*
     *Orlando Lee*

     Noah Kinigstein, Esq.
     315 Broadway, Suite 200
     New York, N.Y. 10007
     Tel. No.: (212) 285-9300
     *Attorney for Relator*
     *Melville Luckie*
     *and Relator Luz Gonzalez*

8